IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPHINE MARIE CORDOVA,

    Plaintiff,

v.                                                No. CIV-13-0709 LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 21)*, filed June 13, 2014, and memorandum in support [*Doc. 23*], filed June 16, 2014 (hereinafter, collectively, "motion"). On August 6, 2014, Defendant filed a response to the motion [*Doc. 24*], and, on August 26, 2014, Plaintiff filed a reply. [*Doc. 25*]. On December 19, 2014, this case was reassigned to the undersigned (*Doc. 27*), and, in accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case (*Docs. 28* and *30*). The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 18*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

## I.   Procedural History

On April 16, 2010, Plaintiff filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), respectively, alleging that she became disabled on December 4, 2009.  [*Doc. 18-7* at 2-5 and 6-9, respectively].  Plaintiff stated that she became disabled due to: ADHD, benign joint hypermobility syndrome, migraines, depression/anxiety, foot and ankle problems, and PTSD.  [*Doc. 18-8* at 7].  Both of these applications were denied at the initial level on August 10, 2010 (*Doc. 18-5* at 2-5), and each application was denied at the reconsideration level on December 16, 2010 (*id.* at 10-12 and 13-15, respectively).  Pursuant to Plaintiff's request (*id.* at 17-18), Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing on March 27, 2012.  [*Doc. 18-3* at 37-55].  At the hearing, Plaintiff was present and testified.  *Id.* at 39, 45-50, 53-54.  In addition, Vocational Expert (hereinafter "VE"), Pamela Bowman, was present and testified.  *Id.* at 39, 50-53.

On July 16, 2012, the ALJ issued her decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 18-3* at 21-35].  Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 16), and, on May 30, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 2-4), which made the ALJ's decision the final decision of the Commissioner.  On August 1, 2013, Plaintiff filed her complaint in this case.  [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence

supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."   20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on October 18, 1983.  [*Doc. 18-7* at 2].  Plaintiff has held the following jobs: in customer service, cashier, assistant manager, leasing agent, substitute teacher, and waitress.  [*Doc. 18-8* at 9].  Plaintiff alleges that she is unable to work because of ADHD, benign joint hypermobility syndrome, migraines, depression/anxiety, foot and ankle problems, and PTSD. *Id.* at 7.  Plaintiff's medical records include: Progress Notes from Mora Valley Community Health Services, dated February and May 2010 (*Doc. 18-11* at 10-13); a Physical Residual Functional Capacity Assessment by Mark A. Werner, M.D., dated June 24, 2010 (*id.* at 21-28); a

Medical Pain Evaluation by David A. Woog,[1] M.D., dated August 2, 2010 (*Doc. 18-11* at 29-31); a Mental Residual Functional Capacity Assessment by Richard Reed, Ph.D., dated August 9, 2010 (*id.* at 33-36); a Psychiatric Review Technique by Richard Reed, Ph.D., dated August 9, 2010 (*id.* at 37-50); and two Case Analyses, one by Allen Gelinas, M.D., dated November 22, 2010 (*Doc. 18-12* at 9), and one by Ralph Rabinowitz, Ph.D., dated December 14, 2010 (*id.* at 10). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of December 4, 2009. [*Doc. 18-3* at 23]. At step two, the ALJ found that Plaintiff has the following severe impairments: hip bursitis, myofascial pain, fibromyalgia, joint hypermobility syndrome, and migraine headaches. *Id.* At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 25.

Before step four, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except she can occasionally reach overhead and can frequently finger." *Id.* In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC]." *Id.* at 27. The ALJ stated that "[t]he medical evidence readily establishes that [Plaintiff's] impairments cause her to suffer from chronic pain, crepitus in her knees, and limited range of motion

---

[1] The ALJ incorrectly spells Dr. Woog's name as "Wong" (*see Doc. 18-3* at 26); however, the record shows that his name is "Woog" (*see Doc. 18-11* at 31).

throughout her lumbar spine;" however, the ALJ found that these deficits "can be accommodated in the normal breaks available throughout the workday, which is approximately every two hours." *Id.* The ALJ found that Plaintiff's hyperpronation in her feet can be resolved with the use of orthotics, and that "[s]he will still be able to walk and stand for extended periods even with the use of orthotics." *Id.* The ALJ stated that she "considered adopting restrictions on [Plaintiff's] abilities to perform postural activities," but noted that Plaintiff "tested negative for pain in her straight leg-raise testing, and she demonstrated no significant problems with performing postural maneuvers in any of her physical examinations." *Id.* at 27-28. The ALJ stated that Plaintiff's "credibility on the functional impact of her impairments is seriously undermined by her daily activities," and that her "credibility on the severity of her migraine headaches is somewhat limited by the statements in the April 2010 medical report describing [Plaintiff] as a malingerer." *Id.* at 28. The ALJ gave little weight to Plaintiff's partner, Ms. Medina's,[2] Third Party Functional Report regarding the side effects of Plaintiffs various pain medications, stating that Ms. Medina's statements on the side effects are inconsistent with Plaintiff's testimony in the hearing. *Id.* The ALJ stated that she gave considerable weight to Dr. Werner's Physical RFC Assessment, then stated "however, that assessment is somewhat reduced because [Plaintiff's] generally normal performance of her daily activities suggests that she is more functional." *Id.* At step four, the ALJ found that Plaintiff has no past relevant work, so the ALJ proceeded to the fifth step. *Id.*

At the fifth and final step, the ALJ noted that Plaintiff was born on October 18, 1983, so she was 26 years old on the alleged disability onset date, which is defined as a younger individual. *Id.* The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English. *Id.* The ALJ stated that "[t]ransferability of job skills is not an issue because [Plaintiff]

---

[2] Ms. Medina states she is Plaintiff's "Partnar" [sic]. [*Doc. 18-8* at 24].

6

does not have past relevant work." *Id.* (citing 20 C.F.R. §§ 404.1568 and 416.968). The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 28-29. The ALJ stated that she asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as the following: hand polisher, electronic assembler, and ticket taker. *Id.* at 29. The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* The ALJ concluded that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V.   Analysis

In her motion to reverse or remand, Plaintiff contends that the ALJ erred in her RFC assessment by: (1) failing to consider the findings of Dr. Reed regarding Plaintiff's moderate mental impairments (*Doc. 23* at 10-12); (2) failing to account for Plaintiff's limitations related to standing and walking, and stemming from her migraine headaches (*id.* at 12-15). Plaintiff also contends that the ALJ erred at step five regarding the jobs the ALJ found Plaintiff could perform and the ALJ's reliance on the VE's testimony. *Id.* at 15-17. In response, Defendant argues that substantial evidence supports the ALJ's findings, the ALJ did not err in her RFC determination, and the ALJ did not err at step five. [*Doc. 24* at 3-9].

### A.   The ALJ's RFC Determination

#### *1. Dr. Reed's Opinions*

Plaintiff first contends that the ALJ erred in her RFC determination by failing to consider the limiting effects of Plaintiff's mental impairments.  [*Doc. 23* at 10].  Specifically, Plaintiff contends that the ALJ failed to consider the findings of state agency consultant, Dr. Reed, that Plaintiff has moderate limitations in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting.  *Id.* at 11 (citing *Doc. 18-11* at 33-34).

In response to this claim, Defendant states that the ALJ did not err because she considered Dr. Reed's opinions and afforded them little weight because they were inconsistent with other evidence.  [*Doc. 24* at 5].  Defendant states that the ALJ found that Plaintiff's daily activities and relationships demonstrated that her mental impairments only caused mild limitations, and that examination notes revealed that Plaintiff had only mild limitations in concentration, persistence and pace.  *Id.* at 5-6.  In her reply, Plaintiff contends that Defendant has supplied an

impermissible *post hoc* rationalization of the ALJ's decision, and that the ALJ improperly rejected Dr. Reed's opinions without discussing or addressing them. [*Doc. 25* at 2].

The findings of state agency medical or psychological consultants are not binding on an ALJ; however, they are medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). As set forth above, in his Mental RFC Assessment of Plaintiff, Dr. Reed opined that Plaintiff has moderate limitations regarding understanding, remembering and carrying out detailed instructions, concentration, performance and attendance, working with others, completing normal workdays and workweeks without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and interacting with the general public, supervisors, coworkers or peers. [*Doc. 18-11* at 33-34]. He further found moderate limitations in Plaintiff's ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and to respond appropriately to changes in the work setting. *Id.* at 34. The ALJ did not address this assessment at all in her opinion. While Defendant contends that the ALJ addressed Dr. Reed's opinions and afforded them little weight, the only citation to Dr. Reed's opinions by the ALJ was in the ALJ's step-two findings regarding Plaintiff's severe impairments, where the ALJ stated that she gave little weight to Dr. Reed's *Psychiatric Review Technique*. [*Doc. 18-3* at 25] (citing Dr. Reed's Psychiatric Review Technique at *Doc. 18-11* at 37-50). As explained in Soc. Sec. Rep. 96-8p, there is a difference between evaluating the severity of mental limitations at steps two and three of the sequential evaluation process based on the broad functional areas identified in the psychiatric review technique, and in assessing mental limitations in the RFC assessment at step four. *See* Soc. Sec. Rep. 96-8p at *4 (explaining that "the [ALJ] must remember that the limitations identified in the

'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process," and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four functional areas of the psychiatric review technique).  Thus, the ALJ's consideration of Dr. Reed's Psychiatric Review Technique at step two does not suffice as consideration of his Mental RFC Assessment at step four, and the Court finds that the ALJ erred in failing to address Dr. Reed's findings of moderate limitations in the Mental RFC Assessment.  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (explaining that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence") (citation and internal quotation marks omitted), and Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *7 ("The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  The Court, therefore, instructs the ALJ that, on remand, the ALJ shall either incorporate Dr. Reed's findings into Plaintiff's RFC assessment, or sufficiently explain why they are rejected.

### 2. *Plaintiff's Limitations From Standing, Walking and Migraine Headaches*

Next, Plaintiff contends that the ALJ failed to give sufficient weight and credit to Plaintiff's statements regarding her limitations for sitting and standing, and stemming from her migraine headaches.  [*Doc. 23* at 12-15].  Plaintiff contends that the ALJ failed to question Plaintiff regarding Plaintiff's statements about her limited ability to stand, walk and sit, and

regarding her migraine headaches.  *Id.* at 13-15.  With regard to Plaintiff's abilities to stand and walk, Plaintiff contends that the ALJ erred by relying on Dr. Werner's June 24, 2010, opinion that Plaintiff could perform light work, because Dr. Werner's opinion did not (and could not) take into account Plaintiff's diagnosis of fibromyalgia by Dr. Woog that was not given until August 2, 2010.  *Id.* at 13-14.  Plaintiff contends that the ALJ failed to give the proper weight to Plaintiff's statements regarding her limitations in standing and walking and with regard to her migraine headaches.  *Id.* at 14-15.

In response, Defendant contends that the ALJ did not err in her assessment of Plaintiff's abilities to stand and walk and regarding her migraine headaches because the ALJ noted that Plaintiff's extensive activities and objective medical evidence undermined her subjective complaints.  [*Doc. 24* at 6-7].  Defendant further contends that the ALJ specifically considered Dr. Woog's August 2010 examination notes which are consistent with the ALJ's RFC determination.  *Id.* at 7.

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  *See also* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations.").  The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any.  Soc. Sec. Rep. 96-8p at *5.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical

evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions. *Id.*[3]

Here, the ALJ found that Plaintiff could perform light work, which requires standing or walking, off and on, for approximately 6 hours out of an 8-hour workday. *See* Soc. Sec. Rep. 83-10, 1983 WL 31251 at *6, and 20 C.F.R. §§ 404.1567(b), 416.967(b) ("[A] job is in [the light work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). The ALJ's RFC determination does not provide for any limitations on Plaintiff's ability to perform the standing and walking requirements of light work, and does not address any limitations stemming from Plaintiff's migraine headaches. The ALJ discussed why she rejected Plaintiff's statements regarding her abilities to stand and walk, explaining that evidence in the record shows that Plaintiff has been consistently able to walk with a normal gait, that any deficits caused by Plaintiff's impairments can be accommodated in the normal breaks available throughout the workday, that Plaintiff's hyperpronation in her feet can be resolved with the use of orthotics, and that Plaintiff will be able to walk and stand for extended periods even with the use of orthotics. *See* [*Doc. 18-3* at 27]. Regarding Plaintiff's migraine headaches, the ALJ stated that she found that Plaintiff's "credibility on the severity of her migraine headaches is somewhat limited by the statements in the

---

[3] The Court has repeatedly recited these requirements for RFC assessments in appeals of ALJ Ann Farris' decisions, and she has repeatedly failed to follow them. *See Garcia v. Colvin*, No. CIV-14-0049 LAM, *Bell v. Colvin*, No. CIV-13-433 LAM, and *Muller v. Colvin*, No. CIV-12-538 LAM. The Court notes that ALJ Farris may have reached the correct decision in each of these cases but the Court was required to remand the decisions because ALJ Farris failed to follow the required analysis for consideration of medical records. Therefore, in light of ALJ Farris' ongoing failure to follow the proper procedures for RFC assessments, the Court directs the Commissioner, on remand, to provide ALJ Farris with a copy of this opinion in the hope that she will follow the requirements for RFC assessments in the future.

April 2010 medical report describing Plaintiff as a malingerer." *Id.* at 28 (citing *Doc. 18-11* at 10-13, which questions whether or not Plaintiff was malingering because her pain assessment was not consistent with the examination and she did not previously report having a severe headache). While the ALJ mentioned Dr. Woog's findings (*see Doc. 18-3* at 26), the ALJ failed to discuss why she rejected his findings regarding Plaintiff's joint pain and limited range of motion, or his diagnoses of fibromyalgia and chronic migraine headaches (*see Doc. 18-11* at 29 and 31). The Court finds that the ALJ erred in failing to do so, because Dr. Woog's findings conflict with the ALJ's RFC assessment. *See* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *see also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) (an ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"). The Court, therefore, instructs the ALJ that, on remand, the ALJ shall either incorporate Dr. Woog's findings into Plaintiff's RFC assessment, or sufficiently explain why they are rejected.

### B.  Plaintiff's Remaining Claims

Because the Court finds that Plaintiff's case should be remanded for further consideration of the opinions of Dr. Reed and Dr. Woog, the Court finds that it is unnecessary to reach Plaintiff's remaining claim that the ALJ erred at step five because that claim may be affected by the ALJ's findings on remand. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by

failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider the opinions of Dr. Reed and Dr. Woog, as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 21)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_Lourdes a. Martinez_
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**